1   Joaquin Andres Acosta

2   PO Box 2889

3   Big Bear Lake, California
    909 744-4500 Phone
4   909 866 8194 FAX
5   Acosta Trees @ MSN, com

6



7               UNITED STATES DISTRICT COURT

8       CENTRAL DISTRICT OF CALIFORNIA - RIVERSIDE

9   Joaquin  Andres  Acosta,  my  heirs,   No. CV18-00369 CJC (KS)
10  successors, assigns and agents
                                          Claims for Malicious Prosecution
11  v.
                                          42 U.S.C. 1983 claims for:
12  United States of America;
                                             False Arrest
13  U.S. Forestry San Bernardino National
14  Forest;                                  Deprivation of Right to Trial by Jury

15  United States Attorney General;          Deprivation of Right to Speedy Trial

16  United States Deputy General Anwar        Commencement of False Claim
    Kahn, and his domestic partner/spouse;
17                                            Malicious Prosecution
    Mark  R.  Snyder,  and  his  domestic
18  partner/spouse;                          Abuse of Process

19  Eileen M. Decker, and  her  domestic     Perjury
    partner/spouse;
20                                           Emotional Distress
    Joseph B. Widman, and  his  domestic
    partner/spouse;                          Slander/Defamation of Character.

22  Deveree  Kopp,  and  her  domestic
    partner/spouse;

23  unknown  men/women, and each of their
24  assumed/presumed betrothed/spouse and
    or domestic partners who assisted the
25  above identified individuals;

26  etc; etc; etc.

27

28

# TABLE OF AUTHORITIES

## STATE CASES

Baron and Holtzoff, Federal Practice and Procedure 121 (Wright Ed.  1960). . . . . . . . . . . . . . . 12

Jaffe v. Stone, 114 P.2d 335 (Cal. 1941). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Sierra Club Found v.  Graham, 85 Cal. Rptr. 2d 726 (Ct. App. 1999). . . . . . . . . . . . . . . . . . . 18

United States Attorney. [cf.] Bradley v. General Accident Insurance Company., 778 A.2d 707
    (Pa. Super. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## FEDERAL CASES

533 U.S. 194 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

85 U.S.  648, 21 L.Ed. 966. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Alcorta v. Texas, 355 U.S. 28. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Amended by Stats. 1992, Ch. 427. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Awabdy v. City of Adelanto, 368 F.3d 1062 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cabrera v. City of Huntington Park, 159 F.3d 374 (9th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . 17

Durley v. Mayo, 351 U.S. 277, 76 S.Ct. 806, 100 L.Ed. 1178 (1956). . . . . . . . . . . . . . . . . . . 10

Estate of Smith v. Marasco, 318 F.3d 497 (3rd Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 16

Giglio v. United States, 405 U.S.  150. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Heck v. Humphrey, 512 U.S. 477 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Johnson v. Knorr, 477 F.3d 75 (3d Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 16

Mooney v. Holohan, 294 U.S. 103, 55 S.Ct.  340. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Napue v.  Illinois, 360 U.S.  2264. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Pyle v.  Kansas, 317 U.S.  213, 63 S.Ct. 177. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

S.Ct.103, 2 L.Ed. 2d 9 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Smithart v. Towery, 79 F.3d 951 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## STATE STATUTES

Penal Code §118.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

**FEDERAL STATUTES**

42 U.S.C. 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

36 C.F.R. 261.9(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13, 19, 21

36 C.F.R. 261.9. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

36 C.F.R. 261.1(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 20, 21

Title 28 U.S.C. section 451(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Title 16 U.S.C. 551. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

30 Stat. 35. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

33 Stat. 628. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

76 Stat. 1157. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

78 Stat. 745. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

82 Stat. 1118. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

104 Stat. 5117. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

36 U.S.C. 261, et seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

36 U.S.C. 261.1(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

1  Claimant, based on personal or first hand knowledge, research, information and
2  conviction, is convicted and hereon claims that all of the following is true, correct,
3  not meant to be misleading, and is/are materially and factually correct:

4

5  ## I. INTRODUCTION

6  1.1 Joaquin Andres Acosta, my heirs, successors, assigns and agents brings actions against
7  the U.S. Attorney General and Assistant U.S. Attorney and the United States of America for
8  Constitutional Torts for, without limitation, violations of Petitioners civil rights (42 U.S.C.
9  1983) and against the individual supervisors of the San Bernardino County Board of
10 Supervisors, the San Bernardino District Attorney and the County of San Bernardino for torts
11 caused by the named defendants actions in violation of Petitioners rights under the United
12 States Constitution and the California Constitution.

13

14 1.2 The United States filed citations against Petitioner without probable cause, filed false
15 and unlawful allegations in a suit against Petitioner (U.S. v Acosta, CVB
16 No.FAEY000Q/CC71) including, without limitation, falsely calling Petitioner a Vigilante
17 Firefighter knowing that such false and unlawful label would be used and publicized out of
18 court. Said case resulted in a Judgment of not guilty in favor of Petitioner Acosta.

19

20 ### Qualified Immunity

21 1.3 The U.S. Supreme Court modified the defense of qualified immunity to shield public
22 employees performing discretionary government functions insofar as their conduct does not
23 violate clearly established statutory or constitutional rights of which a reasonable person
24 would have known.

25 1.4 Qualified immunity turns on two issues:
26
27
28                                    Page 1 of 22

(1) Whether the action in question violated a constitutional right, the facts in this case requiring a jury trial determination in favor of Petitioner. [t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [officials] conduct violated a constitutional right? (Saucier  v. Katz  (99 1977) 533 U.S. 194 (2001) 194 F.3d 962);

(2) Whether that action violated clearly established law clearly evidenced by California Executive Order D78 89, as  a question of law subject to early resolution by the Court. Petitioner suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.(Estate of Smith v. Marasco, 318 F.3d 497, 521 (3rd Cir. 2003); Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007).

1.5  Petitioner was denied due process of law in that:

A. No Probable Cause as determined by the Not Guilty judgment and

B. Failure of the U.S. Attorney to apply Good Samaritan Statute (California Health and Safety Code Section 1799.102) as to Acosta's fire protection and  prevention actions as a good Samaritan, as supported by the not guilty judgment.

C.  Intentional action to use the legal process to defame Acosta by falsely and improperly calling Acosta a Vigilante Firefighter.

1.6 Acosta did not act to suppress and punish crime summarily (Merriam Webster Dictionary).   No  application was made by the U.S. Attorney of the legally applicable statutory language of  Good Samaritan  thereby constituting a litigation claim that is not warranted under existing law as well as assert a position in litigation without probable cause, all prohibited objectives as a matter of law (CA Rules of Professional Conduct Rule 3200).

## **II. Parties**

2.1  Claimants  are:

1    joaquin andres acosta, my heirs, successors, assigns, agents.

2.2    I have extensive training in the following:

25 years Dozer Strike Team Fire Suppression for Federal Government and State of California.

2000 hours of training for Fire Suppression activities.

2.3  Respondents are:

UNITED STATES OF AMERICA (INC.) in its official capacity;

U.S. Forestry San Bernardino National Forest; in its official capacity; and, vicariously liable for:

Mark R. Snyder, in his individual capacity; and, and his assumed/presumed or actual betrothed and or domestic partner;

Eileen M. Decker in her individual capacity; and, and her assumed/presumed or actual betrothed and/or domestic partner;

Joseph B. Widman in his individual capacity, and, and his assumed/presumed or actual betrothed and/or domestic partner;

Deveree Kopp in her individual capacity; and, and her assumed/presumed or actual betrothed and/or domestic partner;

Michael Dier in his individual capacity; and, his assumed/presumed or actual betrothed and/or domestic partner;

Anwar Kahn in his individual capacity; and, his assumed/presumed or actual betrothed and/or domestic partner;

Unknown men/women who participated, initially or after the fact either

Page 3 of 22

1

individually or jointly with respondents ; etc; etc; etc.

2

### III. Jurisdiction

3

.

4

3.1 Jurisdiction is proper under the Third Article in the constitution for the united

5

states of America (1789) as amended; and,

6

7

3.2 Common law, where applicable;

8

3.3 Statutes at Large;

9

10

3.4 United States Code, where indicated herein.

11

3.5 California laws, where indicated.

12

13

### IV. Material Facts

14

15

4.1 There was a huge fire in what was and is commonly known as Big Bear Lake,

16

in San Bernardino California which occurred the Twenty third day of August in the

17

Year of Our Lord, Two thousand fifteen, that has become known as the Snow Summit

18

fire, which was reported at or around 12:30 p.m.

19

20

4.2 I spotted the fire at approximately 11:15/11:30 a.m., I called Tom Elbert, asking him

21

if smoke is by your house. Go up and check it out. Tom called back and said there s

22

a fire, and no one is here.

23

4.3 At approximately 12:00 p.m. I brought in my 4,000 gallon water tank, along with

24

600 feet of water hose, and parked at Toms house, 800 block of Oriole Drive, Big

25

Bear City.

26

4.4. Tom immediately began hooking up the hoses to the tank anticipating the

27

28

Page 4 of 22

impending fire reaching his house.

4.5  At 12:15 I went back to my yard and brought in my bulldozer which I unloaded and was fully operational by 12:45 p.m.

4.6  The snow summit fire required a vast amount of resources:
a massive responsive involving fire engines, water tenders, work crews and an aerial assault which included helicopters and airplanes, including bull dozers, hand crews, and heavy equipment.  But there was no heavy equipment on the fire when i came into suppressing. There was other equipment used, but i was not aware, was not informed, and do not know what other personnel or equipment that was involved to suppressing the fire.  At this time I saw intense fire and smoke rising 1000 feet in the air with flames 100 feet above the Towne Trail at Ford Lane, which was approximately 400 yards to the west of Oriole Drive.  There was ash in the air and burners were dropping behind Tom's house.

4.8 The fire was a multi agency, coordinated response.

4.9 The hand fire crew with a fire truck arrived at town trail at approximately 1:24 p.m.

4.10  Michael Dier arrived at approximately 3:00 p.m. He immediately told me to quit my fire suppression activity. He did this after i had already completed my fire suppression activity, and accepted his offer to cease after seeing that fire crews and equipment started to arrive and prepare to fight the anticipated fire to arrive.

4.11 My fire suppression activities described above were designed to protect men, women, children and approximately four hundred homes adjacent to Town Trail from fire destruction.

Page 5 of 22

4.12   Dire instructed me to go home. It took approximately 45 minutes to load up and take my bull dozer back to the yard.

4.13 Mark R. Snyder wrote the UNITED STATES DISTRICT COURT VIOLATION NOTICE no FAEYOOOQ at 18:34.   It took Snyder a couple of hours before he gave me the   violation notice.

4.14.  Snyder alleged 36 C.F.R. 261.9(a), a class B misdemeanor, imprisonment not more than six months, and a fine of not more than $5,000.

4.15 There was never filed any verified complaint against me, after being arraigned as required under California Penal Code 853.9, which judge was required to follow under The  Judiciary Act of 1789.

4.16 There was never any information or indictment of a Grand Jury, as required under Amendment  five.

4.17 Though I exercised my right to trial by jury by request, I was denied exercising my right, though the amount in controversy exceeded twenty dollars. After the incident that took place on August 23, 2015, other actors became involved and are added as accessaries after the fact, and co-conspired to deprive me of my rights, contrary to the laws of California and the united states.  These other co-conspirators are identified as:

eileen m. decker, in her individual capacity; and, her betrothed, and/or domestic partner(s);

joseph b. widman, in his individual capacity; and, his betrothed, and/or domestic partner(s);

deveree kopp in her individual capacity; and, her  betrothed, and/or domestic partner(s);

1    etc., etc., etc.

2
3    4.18 These above individually identified actors, acted in concert with DIER, and
4    SNYDER, or principals, and/or agents of each other.

5    4.19 Each of these above individually identified actors, acted individually and in
6    concert with DIER and SNYDER, were also extensively trained by book, and on the
7    job by the United States, and have had years of on the job experience.

8    4.20 Each of these above individually identified actors, knew SNYDER wrote a
9    Notice of Violation, indicating 36 C.F.R. 261.9.

10   Each of these above individually identified actors, who acted individually and in
11   concert with DIER and SNYDER, knew or should have known that the actions that
12   I took in my fire suppression activities were allowed to be done, without punishment.
13   [cf.] 36 C.F.R. 261.1(d).

14

15   4.21 Each of the acts committed by DIER and SNYDER when he issued the citation
16   on August 23, 2015 A.D., and by obtaining the help of others, decker, widman, kopp
17   and others hired, these individuals turned into a witch hunt meant to determine a
18   destructive outcome of my life.

19

20   4.22 Each of the acts committed by all of these identified respondents DIER,
21   SNYDER, DECKER, WIDMAN, KOPP (and unknown conspirers) were aiding and
22   abetting to violate 36 C.F.R. 261.1(d), using statements, declarations, that were known
23   by each of the respondents, to be false, or perjured, demanding prosecution, knowing
24   no prosecution was possible under 261.1(d). [cf.] Jesse DeWayne Jacob v. Wayne
25   Scott, 115 S.Ct 711 (1995); [cf.] Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340,
26   342, 79 L.Ed 791 (1935). The Supreme Court has refined this principle over the years,

27

28                                    Page 7 of 22

1  finding a due process violation when a prosecutor fails to correct testimony he knows

2  to be false: Alcorta v. Texas, 355 U.S. 28, 78 S.Ct.103, 2 L.Ed. 2d 9 (1957), even when

3  the falsehood in the testimony goes only to the witness credibility: Napue v. Illinois,

4  360 U.S. 2264, 79 S.Ct 1173. See also Giglio v. United States, 405 U.S. 150, 92 S.Ct

5  763 (1972) (new trial required when Government witness testified falsely on matters

6  relating to credibility and the prosecutor who served as trial counsel should have been

7  aware of the falsehood). Each of the respondents attempted to obtain a conviction by the

8  use of testimony known by the prosecution to be perjured offends due process. (Mooney

9  v. Holohan, 294 U.S. 103, 55 S.Ct. 340; Pyle v. Kansas, 317 U.S. 213, 63 S.Ct. 177.

10  4.23 While the petition did not allege that the prosecution knew that petitioners co-

11  defendants were lying when they implicated petitioner, the State now knows that the

12  testimony of the only witness against petitioner was false at the time of trial.

13

14  4.24 In Durley v. Mayo, 351 U.S. 277, 76 S.Ct. 806, 100 L.Ed. 1178 (1956), the Supreme

15  Court granted certiorari to consider whether due process was offended by a conviction

16  which was later alleged to rest upon perjured testimony, despite the fact that the

17  prosecutor did not known of the testimonies falsity at trial. Although the Court

18  ultimately held that jurisdiction was lacking, and disposed of the case on that basis,

19  four Justices would have reached the merits.

20

21  4.25 This is not the case, in this matter, because the prosecution are learned men/women,

22  and have access to 36 C.F.R.  United States Code, which they read just after being

23  furnished the Citation from Snyder, or some other person(s) that assisted him in delivering

24  said citation to the U.S. Attorneys Office which (must have) approved and subsequently

25  commenced the action in the federal Court.

26

27

28                          Page 8 of 22

1   4.26 I have become aware, and, it is now known that such was case was one of

2   malicious prosecution, because the prosecution was aware from the time just prior to

3   arraignment, that 261.1(d) provided an exception to be prosecuted.

4

5   4.27 The prosecutors knowing this must have presented prior to arraignment a motion

6   to dismiss the action with prejudice. Instead, the prosecution elected to move forward.

7

8   4.28 The prosecutions disposition is now well known because at several times

9   throughout the trial, prosecutor

10

11   4.29 After much delay of approximately two and a half years, the case was heard

12   without the benefit of a jury, and violation of the speedy trial rule, in the UNITED

13   STATES DISTRICT COURT, an Article IV court in Riverside California.

14

15   4.30 The DISTRICT COURT OF THE UNITED STATES was created under

16   Article IV, section 3, clause 2, which are legislative courts. Hornbuckle v. Toombs, (1873)

17   85 U.S. 648, 21 L.Ed. 966. Title 28 U.S.C. section 451(b) states: All law of the United

18   States in force on September 1, 1948,in which reference is made to the Supreme Court

19   of the District of Columbia or to the District Court of the United States for the

20   District of Columbia are amended by substituting UNITED STATES   DISTRICT

21   COURT for the District of Columbia for such designations. Sec. 2, Moores Federal

22   Practice 1.07 (2nd Ed.1967); and 1 Baron and Holtzoff, Federal Practice and Procedure

23   121 (Wright Ed. 1960).

24

25   4.31 The trial that took place on 2017, in a court called the UNITED STATES

26   DISTRICT COURT, located in Riverside, was improper because the forum was

27

28                                    Page 9 of 22

1   improper; and, because the legislative court only applies to those person that work or

2   employed in performing government services within the ten miles square.

3

4   4.32  The trial that took place on January 27, 2017, in a court called the UNITED STATES

5   DISTRICT COURT, located in Riverside, was improper because:

6

7         (a) the venue was improper; and, the land which the courthouse is erected on,

8         was never ceded to the United States, and was never approved by the people of

9         California to allow federal activities to take place within California...violates the

10        Enclave Doctrine;

11

12        (b) it and the judicial officer running the trial lacked jurisdiction, because Congress

13        had no authority to conduct activities outside of the areas defined at Rule

14        1(b)(9) of the Federal Rules of Criminal Procedure;

15        (c) No crime(s) ever took place as noted in the UNITED STATES DISTRICT

16        COURT VIOLATION NOTICE FAEYOOOQ, by me: joaquin andres acosta;

17        (d) I was not required to obtain permission, to engage in the fire suppression

18        activity which became known as the SNOW SUMMIT FIRE.

19

20        (e) Though the Court and United States employees perceived the San Bernardino

21        National Forest was owned by the United States, through training provided by

22        the United States, and that a Federal Courthouse exists, and appearances that

23        California ceded the area where the courthouse exists, said

24        assumption(s)/presumption(s) are invalid, because the United States violated the

25        Enclave Clause of the constitution (1789) by trying to wrongfully retake property that

26        the United States ceded to the people of California in 1849.

27

28                                    Page 10 of 22

4.33 Though by the time SNYDER had written his VIOLATION NOTICE, the fire was essentially out at the time the notice was issued. In order for SNYDER to have located the violation in his Title 36 Code of Federal Regulations Code book, and make reference to 36 C.F.R. 261.9(a), then write this Section on his Notice, he had to pass section 261.1(d) in order to proceed to Section 261.9(a).

4.34 Title 36 C.F.R. 261.1(d), provides the following:

> None of these prohibitions, penalties, or prison time applied to any person engaged in fire suppression actions.

4.35 SNYDER, as a law enforcement officer, was federally trained and certified to know the law before beginning any enforcement. [cf.] Magna Charter, Articles 38, 39 and 45 (still applies now);

**Article 38.**

No bailiff for the future shall, upon his own unsupported complaint, put anyone to his "law", without credible witnesses brought for this purpose.

**Article 39.**

No freemen shall be taken or imprisoned or disseised or exiled or in any way destroyed, nor will we go upon him nor send upon him, except by the lawful judgment of his peers or by the law of the land.

**Article 45:**

We will appoint as justices, constables, sheriffs, or bailiffs only such as know the law of the realm and mean to observe it well. See also [cf.]:

4.36 SNYDER, knew or should have known from his extensive experience as a federal law enforcement officer, that all rules prohibiting destruction of lands, features, of a nation al forest, that activities designed to suppress fires are exempt from enforcement.

4.37 SNYDER, at the time when he wrote his Notice, he knew that charging me with Section 261.9(a) was unsupportable, frivolous, and a false claim, was done with intent to cause harm to me, by having an arrest record, possible jail and fines, or was just pure recklessness and negligence on his part to commence the proceedings.

4.38 Recklessness is a state of mind that is determined both subjectively and objectively. There are two types of reckless behavior. The first looks at what the actor knew or is believed to have been thinking when the act occurred (subjective test). The second considers what a reasonable person would have thought in the defendant's position (objective test). In both situations, the issue turns on conscious awareness, or whether the person knew (or should have known) his actions may cause harm to another.

4.39 For example, it is reckless for a driver of a car to intentionally cross through a highway in defiance of a stop sign if a stream of traffic is seen to be closely approaching in both directions.

4.40 Contrast that with his failure to stop because his attention is diverted and he does not know that he is approaching the crossing (which would be negligent).

### Elements of Recklessness

Page 12 of 22

4.41 Generally, an actor's conduct is reckless if:

> The actor intends to commit the act in question knowing it may create a risk of harm;
>
> The risk itself is an unreasonable one;
>
> The risk is substantially greater than negligent conduct;
>
> The actor knows, or has reason to believe, others are present and in harm's way.

4.42 Recklessness differs from negligence - which consists mainly of carelessness or incompetence in that recklessness requires the conscious choice to take a particular course of action. Also, recklessness requires a further degree of risk on the part of the actor than does negligence. It's important to note that reckless misconduct differs from intentional wrongdoing on one point.

4.43 Under recklessness, the actor intends to commit the act but does not actually intend to cause harm to others. Instead, he may wish that the harm does not happen, but he has a strong reason to believe that it might to believe that it might. Title 16 U.S.C. 551

4.44 Protection of national forests; rules and regulations, provide:

> The Secretary of Agriculture shall make provisions for the protection against destruction by fire and depredations upon the public forests and national forests which may have been set aside or which may be hereafter set aside under the provisions of section 471 [1] of this title, and which may be continued; and he may make such rules and regulations and establish such service as will insure the objects of such reservations, namely, to regulate their occupancy and use and to preserve the forests thereon from destruction; and any violation of the

provisions of this section, sections 473 to 478 and 479 to 482 of this title or such rules and regulations shall be punished by a fine of not more than $500 or imprisonment for not more than six months, or both. Any person charged with the violation of such rules and regulations may be tried and sentenced by any United States magistrate judge specially designated for that purpose by the court by which he was appointed, in the same manner and subject to the same conditions as provided for in section 3401(b) to (e) of title 18. (June 4, 1897, ch. 2, 1, 30 Stat. 35; Feb. 1, 1905, ch. 288, 1, 33 Stat. 628; Pub. L. 87 869, 6, Oct. 23, 1962, 76 Stat. 1157; Pub. L. 88 537, Aug. 31, 1964, 78 Stat. 745;  Pub. L. 90 578, title IV, 402(b)(2), Oct. 17, 1968, 82 Stat. 1118; Pub. L. 101 650, title III, 321, Dec. 1, 1990, 104 Stat. 5117.)

4.45 Sheri Pym, was not specially designated by the court for trying cases pertaining to national forests. Thereby violated Pub. L. 88 537.

4.46 The criminal proceeding was initiated without probable cause, because 261.1(d) is the exception to fire suppression activities, and Snyder knew of this exception, and did so under color of law.

4.47 Snyder acted maliciously or for the purpose other than bringing me to justice, such as to create an arrest record, possible prison sentence, fines and restitution.

4.48 I suffered deprivation of liberty because i was not free to cease from going to court on the criminal case, and the citation was a means of posting a bail which in this matter on personal recognizance on the condition of reporting continually to the court, through day of trial, and the penalty for failure to show, would inititate an arrest warrant be issued for failure to appear and a failure to appear criminal charge would commence. [cf.] Estate of Smith v. Marasco, 318 F.3d 497, 521 (3rd Cir. 2003); Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007).

4.49 Snyder, provided knowingly false statements in the citation, and relayed the citation

with knowingly false information to an official in order to commence an arraignment, through the United States Attorney. [cf.] Bradley v. Gen. Accident Ins. Co., 778 A.2d 707, 711 (Pa. Super. 2001). See also, [cf.] Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the Supreme Court held:

> To recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. 512 U.S. at 487-87. [cf.] Cabrera v. City of Huntington Park, 159 F.3d 374, 380 (9th Cir. 1998) (explaining that Heck bars plaintiff's false arrest and imprisonment claims until conviction is invalidated); Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996) (Heck bars plaintiff's civil rights claims alleging that defendants lacked probable cause to arrest and brought unfounded criminal charges).

4.50 Snyder, knew or should have known, due to his training and experience, that there was no probable cause, to arrest, write the citation he did, knowing that 261 contained an exception at 261.1(d):

> None of these prohibitions apply to any person engaged in fire suppression actions.

4.51 Snyder knew or should have known, due to his training and experience that he could not charge any firefighting personnel.

4.52 These claims stem from the "same transaction, occurrence and event" on which my claims action is based.

4.53 To prevail on a 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted him with malice and without probable cause, that they did so for the purpose of denying him equal protection or another specific constitutional

1  right and that the prior proceedings terminated in such a manner as to indicate his
2  innocence. See Awabdy v. City of Adelanto, 368 F.3d 1062, 1066, 1068 (9th Cir. 2004).

3
4  4.54 Here, Hobbs failed to establish a triable issue on at least two of those elements -
   probable cause and favorable termination.
5

6                              **Favorable Termination.**

7  4.55 A prosecution ends favorably when it "tends to indicate the innocence of the accused."
8  Jaffe v. Stone, 114 P.2d 335, 338 (Cal. 1941). "When the proceeding terminates other than
9  on the merits, the court must examine the reasons for termination to see if the
10 disposition reflects the opinion of the court or the prosecuting party that the action
11 would not succeed." Sierra Club Found v. Graham, 85 Cal. Rptr. 2d 726, 734 (Ct. App.
12 1999). Hobbs v. City of Long Beach (9th Cir., 2013).

13

14                              **Causes of Action**

15 **1st Cause of Action - False Arrest.      (Mark R. Snyder, United States, USAG)**
16 Trial ended in acquittal.
17 Paragraphs 1.1 through 4.55 are realleged and made reference to and incorporated as though
18 set forth fully.

19

20      42 U.S.C. 1983 - False Arrest by Mark R. Snyder. Snyder made a false arrest
21      without probable cause. Snyder then without authority issued a warrant for me
22      to appear. Snyder as an executive officer of the United States may not execute
23      judicial department functions, which are issuing warrants, subpoenas.   This
24      violates Article III of the federal constitution.   Said issuance of the
25      warrant/subpoena was wrong and false from the beginning.

26

27

28                              Page 16 of 22

Relief: Each defendant individually, jointly and severally pay $2,000,000 or according to highest verdicts on same subject matter, or jury finding and, A written letter of apology from each defendant, on his/her Official Govt. Letterhead.

**2nd Cause of Action - Deprivation of Right to Trial by Jury. (Sheri Pym, United States)**
Trial ended in acquittal.
Paragraphs 1.1 through 4.55 are realleged and made reference to and incorporated as though set forth fully.

42 U.S.C. 1983 - Deprivation of Right to Trial by Jury. The federal constitution gives me the right to a "trial by jury" when the controversy exceeds twenty dollars. The United States falsely charged me under 36 C.F.R. 261.9(a), which potential punishment of not more than six months and a fine not more than $5,000. Though I put in my demand for trial by jury in writing, prior to arraignment, United States Magistrate Judge Sheri Pym, denied me this right at and through the trial held on January 27, 2017, though the controversy (the fine) would be greater than Twenty dollars..

Relief. Each defendant individually, jointly and severally pay $10,000,000.00, or according to highest verdict, or jury award and, A written letter of apology from each defendant, on his/her Official Govt. Letterhead.

**3rd Cause of Action - Deprivation of Right to Speedy Trial. (Sheri Pym, United States)**
Trial ended in acquittal.
Paragraphs 1.1 through 4.55 are realleged and made reference to and incorporated as though set forth fully.

42 U.S.C. 1983 - Deprivation of Right to Speedy Trial.  The federal constitution (1789) requires a speedy trial.  From  August 23, 2015 when I was falsely charged, and through January 27, 2017, I was denied a speedy trial.

Relief.  Each defendant individually, jointly and severally $10,000,000,00 or, according to highest verdict, or jury award and, A written letter of apology from each defendant, on his/her Official Govt. Letterhead.

**4th Cause of Action - Malicious Prosecution.**

Paragraphs 1.1 through 4.55 are realleged and made reference to and incorporated as though set forth fully.

42 U.S.C. 1983 - Malicious Prosecution by the U.S. Attorney General, Assistant U.S. Attorney Anwar Kahn, and the United States of America, commenced August 23, 2015 ending at   Trial on January 27, 2017, decision of  **acquittal**.   Despite  Defendants complete knowledge of 36 U.S.C. 261, et seq. including 36 U.S.C. 261.1(d), they ignored the [§261.1(d)] law, thereby continued to prosecute from the time I presented said defense at arraignment, but was ignored, thus commencing Malicious Prosecution.

Relief.  Each defendant individually, jointly and severally pay $2,000,000.00, or according to highest verdict, or jury award; and, A written letter of apology from each defendant, on his/her Official Govt. Letterhead.

**5th Cause of Action - Abuse of Process.  (Sheri Pym, United States, USAG).**

Paragraphs 1.1 through 4.55 are realleged and made reference to and incorporated as though set forth fully.

1   Abuse of Process by Use of Unauthorized Allegation of the words "Vigilante Firefighter"
2   and/or Failure of Probable Cause by Intentional Exclusion of U.S. Good Samaritan Statute
3   Resulting in Not Guilty Judgment

4

5   Relief.  Each Defendant individually, jointly and severally pay $5,000,000.00; or according
6   to highest verdict on the books, or according to jury award and, A written letter of apology
7   from each defendant, on his/her Official Govt. Letterhead.

8

9   **6th Cause of Action - Penal Code  118.1.  (1) Mark  R.  Snyder,** and, (2) United States
10  Attorney General  and  United States  Deputy General Anwar  Kahn
11  Paragraphs 1.1 through 4.55 are realleged and made reference to and incorporated as
12  though set forth fully.

13

14  (1) On August 23, 2015 upon writing the Citation for  36  C.F.R.  261.9(a),  and  delivery
15  to Acosta.  Snyder, being a trained NFS LEO, new that there was the exception under
16  261.1(d). Therefore, he knew said citation and allegation was false; and, was improper
17  for Snyder to issue any summons/subpoena as he is not a judicial Officer. Snyder was
18  performing judicial officer functions, contrary  to  Article  III,  and  violated  the
19  Constitution Snyder vowed (took an oath) to support and defend.  His erroneous
20  action further and erroneously to trial which took place nearly two and one-half years
21  later, and an  acquittal.

22
    (2) From the time of Arraignment, the United States Attorney General, and Deputy
23
    Attorney General Anwar knew the charge was wrong when I informed them of
24
    §261.1(d) exception. Despite being informed, the USAG, and Deputy ignored the law,
25
    and did not support or ask for dismissal. To spite me, they filed reports with the court,
26
    (asked for a trial date), with Defense counsel, knowing said reports were unsupported in law.
27

28                              Page 19 of 22

Penal Code §118.1.  Every peace officer who files any report with the agency which employs him or her regarding the commission of any crime or any investigation of any crime, if he or she knowingly and intentionally makes any statement regarding any material matter in the report which the officer knows to be false, whether or not the statement is certified or otherwise expressly reported as true, is guilty of filing a false report punishable by imprisonment in the county jail for up to one year, or in the state prison for one, two, or three years. This section shall not apply to the contents of any statement which the peace officer attributes in the report to any other person. (Amended by Stats. 1992, Ch. 427, Sec. 124. Effective January 1, 1993.)

Relief.  Each Defendant individually, jointly and severally to pay according to the common law (treble damages) Fed wanted restitution to $45,000.  My calculations approximate $180,000 including interest @ 10% per anum; or according to highest verdict, or according to jury award and, A written letter of appology from each defendant, on his/her Official Govt. Letterhead; and,. That these individuals get terminated from their jobs for reasons of moral terpitude.

**7th Cause of Action - Emotional Distress.**   United States,  San Bernardino National Forest,   United States Attorney General, Deputy Attorney General Anwar Kahn, Mark R. Snyder, Eileen M. Decker, Joseph B. Widman, Deveree Kopp.

Paragraphs 1.1 through 4.55 are realleged and made reference to and incorporated as though set forth fully.

From commencement of the erroneous action (the citation) on August 23, 2015, in helping put out a huge fire, and unreasonably detained and arrested, and forced to be involved without the benefit of certain constitutional rights, i.e., an Information or Indictment of a Grand Jury, and without probably cause, my mind was intentionally assaulted emotionally by Snyder and other NFS personnel, for my being a Good Samaritan.  I was held captive wondering If I was going to jail for a half a year, then the USAG/Deputy and NFS personnel wanted me to pay for assisting them put out the fire, or maybe wrongfully have me assist financially in post fire clean up operations to the tune of $45,000.  Having given the Court and the USAG section 261.1(d) made me exempt from prosecutions and fines, and them ignoring the law, caused me severe Emotional Distress.

1   Relief. $25,000,000,00, or according to highest verdicts for Emotional distress, or according

2   to City of Tampa v. Trezevant, or jury award.  Each respondent responsible individually,

3   jointly and severally and, A written letter of appology from each defendant, on his/her

4   Official Govt. Letterhead.

5

6   **Eight Cause of Action.  Commencement of a false action.  42 U.S.C. 1983.**

7                                                   United   States,   San   Bernardino
                                                    National   Forest,    United   States
8                                                   Attorney General, Deputy Attorney
                                                    General   Anwar   Kahn;   Mark   R.
9                                                   Snyder, Eileen M. Decker, Joseph
                                                    B. Widman, Deveree Kopp.
10

11   Paragraphs 1.1 through 4.55 are realleged and made reference to and incorporated as though

12   set forth fully.

13

14   From the time of commencement of the false and erroneous action, each defendant was the

15   principal or assisted each other in further prosecuting the action, after being informed that

16   261.1(d) was the exception.  Each defendant under color of authority abused my right to be

17   secure in my person, but arrested me and charged without probable cause or warrant. It

18   appears each were on a "witch hunt" and wanted to create a criminal record conviction to

19   tarnish my good reputation.

20

21   Respondent, mark r. snyder, is/was a federal state actor employed by USFS; Snyder,

22   was trained by the United States.  Snyder's education was highly slanted, in that he was

23   taught "it is us or them", meaning that of mutual combatants, rather than how to act a a

24   servant of the people.  From his training he learned that he can abuse people simply by

25   issuing them a citation (without merit).  This type of training is contrary to the founding

26   fathers firmly held belief  of our Country ought to be run; and was contrary to the

27

28                                          Page 21 of 22

Constitution.  Snyder voluntarily and with knowledge of the falsity contained in his citation, he initiated a criminal proceeding, anyway.  The criminal proceeding ended in my favor, by a judgment of not guilty.

**9th Cause of Action.  Slander/defamation of Character.**      United States, United States Atty Gen'l, Deputy A.G. Anwar Kahn.

Paragraphs 1.1 through 4.55 are realleged and made reference to and incorporated as though set forth fully.

The United States, USAG/Depty AG shortly after the commencement of the action against me, he used on the AG's website the term "vigilante firefighter."  There had been no adjudication.  There were other publications such as the Sentinel, where the term came up.  Making wrongful use of public opinion against me.

Relief.  Each defendant individually, jointly and severally pay $2,000,000.00, or according to highest verdict, or jury award; and, A written letter of appology from each defendant, on his/her Official Govt. Letterhead.

This _21_ day of February, A.D., 2018

By: _Joaquin Andres Acosta_

Joaquin Andres Acosta, and for my

heirs, successors, assigns and agents.

Page 22 of 22